**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| XINGSHAO LI, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | Civil Action No.: 26-cv-3970 <br><br> Honorable Judge Mary M. Rowland <br><br> Magistrate Judge Albert Berry, III |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT AHORASKY'S
MOTION TO DISMISS**

Plaintiff Xingshao Li ("Plaintiff"), through its counsel, respectfully submits this response in opposition to Defendant Ahorasky's ("Defendant") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) (the "Motion") [51].

I.     INTRODUCTION

Plaintiff filed this patent infringement action against several foreign, online sellers operating under fictitious aliases on marketplace platforms, all targeting the United States and the State of Illinois with the same infringing sales scheme. *See* Am. Compl. [8]. To combat exactly this kind of willful, coordinated infringement, Plaintiff sought and obtained the necessary *ex parte* temporary restraining order and preliminary injunction. [23], [39]. Before granting that relief, this Court required, and Plaintiff confirmed, that each listing was active, had generated concrete sales into Illinois, and did not overlap with any prior enforcement effort. [18], [20]–[21].

Defendant was not blindsided by any of this. It received actual notice of these proceedings on at least four separate occasions, via email to the very address tied to its own fictitious alias, on

1

top of whatever notice it independently received from the marketplace platform itself. [31], [34], [45], [50]. That notice plainly worked, evidenced by Defendant appearing through counsel and numerous co-defendants reaching resolutions and being dismissed from this action entirely. Here, notice under Rule 65 did exactly what it was designed to do.

Service of process is a different question, and Plaintiff treated it as one. Before ever seeking alternative service, Plaintiff investigated Defendant's identity the same way it investigated every other defendant on Schedule A: reviewing every piece of public-facing information on Defendant's own seller profile, and testing every address that profile provided. *See* [17]; *see also* Ex. C to Am. Compl. [11]. The address Defendant itself listed returned no result matching its own purported business name or alias. That pattern is characteristic of anonymous online sellers, who commonly list identifying information that does not resolve to any locatable person or place, frustrating traditional methods of service. Only after confirming the address was fictitious in nature did Plaintiff seek, and this Court grant, alternative service under Rule 4(f)(3). *See* [24]–[25]. This reasonably diligent effort confirming no proper address exists, and this Court's order crediting it, is precisely the showing the Seventh Circuit requires under *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793 (7th Cir. 2026) ("Kangol").

Nothing in Defendant's Motion disturbs this finding. Rather, Defendant's Motion asks this Court to reverse that finding just based on Defendant's own say-so that the address was real all along. In other words, Defendant's position is that because an address existed — whether fictitious or not — service must be effectuated there. Indeed, Defendant's Motion provides no proof, no business registration, no government filing, and no declaration, from anyone, supporting that the purported address is proper or otherwise accurate.[1]

---

[1] The one declaration Defendant did file was struck from the record entirely, and even it never once mentioned the address. *See* [49].

Plaintiff respectfully submits that this Court should deny Defendant's Motion in full. The credited record remains unrebutted and, as set forth below, is only further confirmed by further research and on closer scrutiny of Defendant's own citations. Notwithstanding, Defendant's voluntary filing of a merits-based opposition, in the same brief as its service objection, provides further support for denial. In the alternative, and as Defendant's own Motion itself proposes, the Court should quash service and grant Plaintiff leave to re-serve Defendant, rather than dismiss, because dismissal at this early, pre-answer stage would serve no party and no purpose. In either event, because the Rule 65 notice standard is distinct from Rule 4 service, Plaintiff respectfully submits that any ruling on this Motion should have no bearing on the Preliminary Injunction already in place.

## II. THE SERVICE FRAMEWORK

Anonymous seller aliases operating on e-commerce platforms are often not "persons" or entities in the sense the Hague Convention and Rule 4 contemplate. The Convention was drafted in 1965, and Rule 4's current framework for foreign service dates to 1993, both decades before the modern e-commerce marketplace existed, and neither anticipated a world in which foreign sellers manufacture, dissolve, and reconstitute anonymous online identities to exploit the U.S. market, infringing U.S. intellectual property, while evading service. That framework was not built for defendants who may not be identifiable persons in the first place.

Formal service through China's Central Authority proceeds by a USM-94 Request for Service Abroad, a standardized form that requires the requesting party to state the true and correct identity and address of the person to be served. The form has no field for "unknown," and the Central Authority will not process a request that does not identify a specific, legally recognized person or entity at a specific, registered address. Where, as here with Defendant, a seller alias's

purported address returns no location bearing either the alias name or any purported business name, there is nothing accurate Plaintiff could enter on that form. Attempting it under those circumstances is not an attempt at service so much as a performative act on an incomplete and impossible record — one that, months or years later and after substantial expense, is likely to yield only the same answer: no such defendant is identifiable at the purported address provided. Alternative service under Rule 4(f)(3) was accordingly the only meaningful path forward, as set forth below.

## III.   LEGAL STANDARD

Rule 4(f) provides that serving an individual in a foreign state may be accomplished under three disjunctive means. Either by "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Or, "if there is no internationally agreed means…by a method that is reasonably calculated to give notice." Fed. R. Civ. P. 4(f)(2). Or, "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

Rule 4(f)(3) is an ordinary, court-approved method of service, not a disfavored last resort, and a plaintiff need not first attempt and exhaust other methods before seeking relief under it. The relevant international agreement here is the Hague Service Convention. Article 1 of the Hague Service Convention explicitly states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." 1969 U.S.T. LEXIS 152, *16. Where a defendant's proper address is not known, the Convention simply does not apply, and there is no international agreement for Rule 4(f)(3) to run afoul of.

The Seventh Circuit's decision in *Kangol* sets out the governing framework for this inquiry. *Kangol* held that where the Convention applies, it prohibits service by email on defendants in China, because China has objected to the Article 10 methods through which email service might otherwise be permitted. 177 F.4th at 801-02. *Kangol* also held, equally clearly, that the threshold determination is whether the Convention even applies in the first place, and it reversed and remanded because the district court below had never made that threshold determination. *Id.* Its holding on email service is therefore conditional, where it applies only if the Convention applies, and the panel expressly left the antecedent question of applicability for the district court on remand. *Id.* In doing so, *Kangol* endorsed the standard this District has long applied, where a plaintiff must show "'reasonably diligent efforts to ascertain *and verify* [the] defendant's mailing address' before deeming the defendant's address unknown." *Id.* at 799 (quoting *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021)).

The Supreme Court has confirmed that applicability is the threshold question in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ("Schlunk"). There, the foreign defendant invoked the Convention to defeat service, but the Court held the Convention did not apply because the forum's law permitted service without transmitting any document abroad and upheld the service. *Id*. at 707-08. Although the Convention's procedures are "mandatory in all cases to which it applies" *Id*. at 705, whether it applies at all is logically antecedent; and where, as here, the Defendant's proper address is not known, it does not apply.

Courts in this and other Districts have long held and repeatedly authorized service by court-ordered email (and/or electronic publication) under Rule 4(f)(3) on overseas Schedule A sellers whose addresses are hidden or otherwise unverifiable. *See Yiwu Langxun Elec. Commerce Co. v. John Doe Corps*, No. 25-11509, 2025 LX 403822, at *4 (E.D. Mich. Nov. 4, 2025) (Granting

alternative service after observing the "true addresses are still unknown following Plaintiff's research which revealed that the addresses provided to Amazon are either incorrect or fake."); *Timeless Prod. FZ Ltd. Liab. Co. v. Boboyev*, No. 5:25-cv-07059-NW, 2026 LX 281508, at *3-4 (N.D. Cal. June 5, 2026) (Granting alternative service and noting "[c]ourts have recognized that where a foreign defendant provides false, incomplete, or unverifiable address information, Hague service is unavailable and alternative service is appropriate."); *see also Sony Interactive Ent. LLC v. P'ships & Unincorporated Assn's Identified on Schedule "A"*, No. 25-cv-04642, 2026 LX 278132, at *2 n.1 (N.D. Ill. Apr. 30, 2026).

*Kangol* has not disturbed this repeated and widely held finding. The question whether the Hague Service Convention's Article 1 threshold is met on a given record is one this Court resolves case by case, and on this record, for the reasons below, it should be resolved in Plaintiff's favor.

Where the Convention does not apply, the proposed alternative method of service must simply satisfy the usual due process requirement: it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); *In re Int'l Telemedia Assocs.*, 245 B.R. 713, 721 (Bankr. N.D. Ga. 2000) ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them."); *Phillips v. Defendant*, No. 1:24-cv-07511, 2024 LX 261785, at *4 (N.D. Ill. Oct. 2, 2024) (Courts "have allowed a variety of alternative service methods, for example

service by e-mail where a plaintiff demonstrates the likelihood that the proposed alternative method of service will notify a defendant of the pendency of the action.")

## IV.   ARGUMENT

Defendant's Motion should be denied for multiple, independent reasons. First, the record this Court already credited in granting alternative service was made in full compliance with *Kangol* and remains entirely unrebutted, where Defendant has offered no evidence to disturb it. Second, further research and the very sources Defendant does cite confirm that record. Third, Defendant's voluntary merits filing in a prior, since-stricken brief further supports denial. Alternatively, even if this Court were to conclude that some relief is warranted, dismissal is not the appropriate remedy at this early, pre-answer stage; quashing service and permitting re-service would be. Finally, any such ruling should have no bearing on the Preliminary Injunction already in place.

### A.   The credited record remains unrebutted.

In seeking alternative service, Plaintiff engaged in diligent research to "ascertain and verify" Defendant's mailing address, reviewing any publicly available information on Defendant's seller profile and testing the address it provided against a search to determine whether any result actually corresponded to that seller's purported business name or alias. No result did, evidencing no proper address was available after reasonable diligence. Accordingly, Plaintiff advised this Court that "the results suggest the business addresses are fictitious in nature, paralleling their use of fictitious seller aliases; and as a result, the actual addresses of the persons to be served are not known." [17]; *see also* Ex. C to Am. Compl. [11]. That representation remains true and correct — and unrebutted on this record. This Court reviewed that showing, where Plaintiff attempted to "ascertain and verify" a proper address, and granted alternative service based on the unsuccessful investigation. [24]–[25]. This does not run afoul of *Kangol*.

Defendant's Motion does not identify any error in that finding, nor does it argue that Plaintiff's investigation was incomplete, that a different search methodology would have yielded a different result, or that any specific step in Plaintiff's diligence fell short of what *Kangol* requires. Defendant simply disagrees with the outcome, insisting the address is real; yet Defendant offers no evidence to support that disagreement.

As a preliminary matter, Defendant's Motion attaches no exhibits or declarations of its own. Every assertion regarding Defendant's business name and address is sourced not to anything filed with the Motion itself, but to Defendant's earlier Response in Opposition to Plaintiff's Motion for Entry of Default [47], which this Court struck in its entirety and which is not part of the evidentiary record. Defendant's Motion accordingly asks this Court to credit evidence that, as a matter of record, no longer exists.

Even setting that procedural defect aside, the underlying material would not disturb Plaintiff's showing regardless. The only sworn statement Defendant ever filed in this case — the Declaration of Han Wu, [47-1] — says nothing about the legitimacy of Defendant's purported business nor the accuracy of the purported business address. Defendant's "known address" argument is nothing more than pure conjecture, unsupported by any evidence.

Defendant next points to a USPTO filing, claiming the address of its trademark matches the purported business address on the marketplace. Again, this does not challenge the record nor establish the legitimacy of Defendant's purported business or the accuracy of the purported business address. As an initial matter, Defendant's USPTO trademark filing lists a similar address — not the same, as described below. Regardless, such a showing is not conclusive of anything, because both are self-reported submissions, made by Defendant itself, and their similarity shows only that Defendant used a similar purported address across two of its own filings. It does not rebut

Plaintiff's concrete showing that the address (on Amazon) returns no result matching either Defendant's alias or its purported business name, and it does not establish that the address is otherwise proper.

If the purported address were genuinely a proper, working place of business, any number of rudimentary records could support that assertion — records entirely within Defendant's own control to produce. Defendant has had every opportunity to submit any actual evidence, but it has produced none.

*Kangol*'s threshold inquiry turns on precisely this record. Under Article 1, the Hague Service Convention does not apply where the address of the person to be served is not known. Plaintiff's reasonably diligent efforts to ascertain and verify Defendant's address failed — no result corresponded to Defendant's purported business name or alias. Defendant's address was accordingly unknown within the meaning of Article 1, the Convention did not apply, and Rule 4(f)(3) remained open as a proper avenue for service. That is precisely the showing *Kangol* requires, and precisely the finding this Court already made. Defendant has offered no evidence of any kind to disturb it.

Finally, email service here was reasonably calculated, under all the circumstances, to apprise Defendant of the pendency of this action and afford it an opportunity to present its objections. It plainly was: Defendant is here, and numerous other defendants served the same way are, or were, here too. The email address used is tied to Defendant's active seller account, the very account Defendant must monitor to receive order notifications and, above all, disbursement of its sales proceeds — an address Defendant cannot afford to ignore. Further, Defendant operates as a purely online entity, transacting with customers, the marketplace, and everyone else exclusively through electronic means. Service by that same electronic channel was accordingly reasonably

calculated to reach Defendant, and it did. Defendant's Motion does not argue otherwise. That requirement, like the rest, stands unrebutted.

**B.      Further investigation confirms the record.**

As described above, Defendant does not contest the fact that Plaintiff's reasonable search was accurate, where the purported address was searched and no result matched Defendant's alias nor purported business name. Plaintiff has subsequently run the inverse of its original investigation. Rather than starting from Defendant's listed address and checking whether it returned Defendant's business name, Plaintiff started from Defendant's purported business name — "Shenzhen Ouyuan Technology Co., Ltd." — and searched for it directly. *See* Ex. A hereto. That search does not return Defendant's claimed address at Gangshen International Center. Instead, it surfaces a cluster of similarly-named but distinct entities at addresses with no relation to Defendant's purported one. *Id*. It is evident that Defendant's own purported business name and alias name does not correspond to the purported address Defendant asks this Court to accept. Whichever direction the search runs, the result is the same – a proper address for Defendant was and remains unascertainable and unverifiable.

In addition, independent registry research confirms what Plaintiff's original diligence established: the store's self-reported name and address do not correspond to a single, serviceable registered entity. The accompanying Declaration of Ge (Linda) Lei and Exhibit B attach official corporate-registry records for the entity named on Defendant's Amazon Seller Profile and United States trademark — "Shenzhen Ouyuan Technology Co., Ltd." Lei Decl. ¶¶ 3–7 & Ex. B.

Those records disclose two different Chinese companies whose English names are identical — both romanize to "Shenzhen Ouyuan Technology Co., Ltd." — but whose Chinese names differ by a single character: 深圳市欧源科技有限公司 (源) and 深圳市欧缘科技有限公司 (缘). They

are distinct legal entities: they carry different unified social credit codes (91440300349729267A versus 91440300MA5GT08W1G), different legal representatives (伍敬明 versus 吴晗), different registered capital (¥3,000,000 versus ¥10,000), and different registered addresses in different districts of Shenzhen. Lei Decl. ¶¶ 4–6 & Ex. B.

Critically, Defendant's Amazon Seller Profile and USPTO trademark state only the romanized name "Shenzhen Ouyuan Technology Co., Ltd." — a name that, per the registry, both companies share equally — and no Chinese characters or unified social credit code that would identify which company Defendant actually is. The two identifiers those sources do supply diverge: the shared English name corresponds, on the registry, to 深圳市欧源科技有限公司 (源), whose registered domicile is not the Longhua office but a residential apartment in Bao'an District (松风明月花园6栋6-2704); while the Longhua office address Defendant gives (港深国际中心7A015) is the registered domicile of the differently-named 深圳市欧缘科技有限公司 (缘). No identifier in Defendant's own submissions resolves specifically to the entity whose name they carry. Lei Decl. ¶¶ 4–6, Ex. B.

Nor does the cross-check Defendant invokes cure the problem. Defendant's Motion recites its address as it appears on the Amazon profile, ending in postal code 518131, and separately as it appears on the USPTO trademark registration, ending in postal code 518000 — reciting, in its own words, two different postal codes for the same room. [51] at 5. Defendant characterizes this as "double verified by Amazon.com and the USPTO database," [51] at 6, but those two sources supply only a romanized name that matches two different registered companies in two different districts of Shenzhen, and they cannot even agree with each other on the postal code for the room they both claim to describe. Two self-reported sources that conflict with each other do not corroborate one address — they confirm the opposite.

This is not an incidental detail. As discussed above, a submission bearing the wrong postal code is precisely the kind of defect that could cause the Central Authority to reject the request outright, after months of delay and expense already spent. Which code is correct? Defendant does not say, and its Motion does not acknowledge the discrepancy. The relevant inquiry is what was knowable at the time Plaintiff sought alternative service, and on that record, this same conflict existed and remained unresolved.

To be clear, Plaintiff does not contend that either company acted fraudulently, that the two are coordinated (the records show no connection between them), or that Plaintiff has now located Defendant's true service address. Nor does Plaintiff dispute that both addresses physically exist — the maps confirm a commercial building in Longhua and a residential complex in Bao'an. Lei Decl. ¶ 7 & Ex. B. The narrow point is the one Plaintiff made in April and this Court already credited: the public identifiers Defendant self-reports do not resolve to a single registered person or entity at a single verified address, so a proper address "is not known" within the meaning of Article 1. This later research confirms that April showing; it does not supersede it.

Multiple independent lines of inquiry all arrive at the same place. The inverse search shows Defendant's own business name does not resolve to its claimed address. The registry records show that name does not even belong to one entity — it belongs to two, in different districts, and nothing Defendant has submitted says which one it is. And, the one further data point Defendant does supply comes with two different postal codes depending on which of Defendant's own documents one reads. This is not a case where Plaintiff overlooked an available answer; it is a case where Defendant's own account of itself does not add up to one. That is precisely what it means for an address to be "not known" within the meaning of Article 1, and further research has only deepened,

not narrowed, the uncertainty this Court already found sufficient to grant alternative service in the first place.

### C. Defendant's voluntary merits filing further supports denial.

Independent of the foregoing, Defendant's June 27, 2026 filing provides a further basis for denial. Before any motion for default had been directed at Defendant specifically, Defendant voluntarily filed a 17-page opposition, with a declaration and six exhibits, substantively arguing patent invalidity and seeking leave to answer. [47]. That went beyond the settlement discussions the Seventh Circuit found insufficient to establish waiver in *Kangol*. There, the defendant only negotiated; here, Defendant affirmatively briefed the merits, unprompted. *See Kangol LLC*, 177 F.4th at 797 (finding no waiver where the defendant did no more than pursue settlement, and contrasting with conduct giving the plaintiff "a reasonable expectation that he will defend the suit on the merits" (citations omitted)). This Court later struck that filing on an unrelated procedural ground, [49], but striking it does not undo what Defendant voluntarily placed before the Court nor does it undo the reasonable expectation it left that Defendant would defend the suit on the merits.

### D. Alternatively, any defect warrants re-service, not dismissal.

Even if this Court were to find that some relief is warranted, dismissal is not appropriate. The remedy for insufficient service of process under Rule 12(b)(5) is discretionary, and courts routinely quash defective service and permit re-service rather than dismiss, particularly at this early, pre-answer stage where no responsive pleading has been filed and no prejudice results.

Defendant's Motion asks for precisely this relief in the alternative. [51] at 8. There is no genuine dispute, then, that this alternative remedy is available and appropriate; the only question is which of the two outcomes the Court should choose. Here, dismissal serves no party and no purpose. Defendant has already appeared, has already retained counsel, and has already litigated

substantively on the merits, as described above. Quashing service and granting Plaintiff a window to re-serve preserves Defendant's stated interest in service without extinguishing Plaintiff's claims on a technical ground unrelated to the substance of this case.

Any ruling on this Motion, moreover, should have no bearing on the Preliminary Injunction already in place. The notice standard under Rule 65 is distinct from the service-of-process standard under Rule 4, and this Court's earlier finding that Defendant received notice reasonably calculated to apprise it of this proceeding — a finding independently confirmed by Defendant's own appearance through counsel — stands on its own footing regardless of how this Motion is resolved. A determination that service should be quashed and cured does not retroactively undermine the notice already found sufficient to support the Preliminary Injunction, nor does it disturb the relief already granted. The Preliminary Injunction should remain in full force and effect in either event.

Should this Court nonetheless grant any relief, Plaintiff respectfully requests that it order Defendant to provide, under oath and from someone with personal knowledge, its correct legal name and a current, serviceable business address. As detailed above, no source — forward or reverse search, registry record, or Defendant's own citations — resolves that information today. The very need for such an order should be dispositive of Defendant's contention that its address is already known — if it were, no order compelling Defendant to state it would be required at all. Plaintiff nevertheless requests it, so that any re-service ordered by this Court is directed at a name and address Defendant has actually confirmed under oath, rather than the unresolved and conflicting information currently before the Court.

## V.    CONCLUSION

Plaintiff undertook a reasonably diligent search to ascertain and verify a proper address for Defendant; this Court reviewed it, granted alternative service, and nothing since disturbs that

finding. The relevant inquiry is what was knowable at the time alternative service was sought, and Defendant offers no exhibits, no declaration, and no evidence that Plaintiff's methods or results were wrong or otherwise insufficient. If anything, further research only deepens the same uncertainty that existed when this Court decided the motion: no address matches Defendant's name, no name matches Defendant's address, a foreign registry shows two distinct entities under that name in different districts, and Defendant's own Motion cannot even state one postal code consistently. Which one is correct? Neither Plaintiff nor this Court should have to guess — and that is precisely why the address was unknown within the meaning of Article 1, and precisely why the Convention did not apply. *Kangol*'s prohibition on email service to China applies only once the Convention governs, and it was never implicated here.

DATED July 28, 2026

Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*